STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 52364015236401)
LINA PENG (NYBN 5150032)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-67476747
   FAX: (415) 436-72347234
   Ross.weingarten@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE BANUELOS-GARCIA, <br><br> Defendant. | NO. CR 21-MJ-71654 MAG <br><br> **UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION MOTION FOR DEFENDANT JOSE BANUELOS-GARCIA** <br><br> Hon. Kandis Westmore |

Jose Banuelos-Garcia ("Banuelos" or "the defendant) is a high-ranking member of a San Jose-based drug trafficking organization led by Raul Jimenez-Verduzco (the "Verduzco DTO"). Federal and state law enforcement have been investigating the DTO since October 2020, including through two federally-authorized wiretaps. This investigation has led to the seizure of more than 650 pounds of methamphetamine and over 15 pounds of heroin from the DTO. Banuelos was identified as a member of the DTO in August 2021, when he brokered a deal for approximately 20 kilograms of methamphetamine between Verduzco and another individual. Law enforcement witnessed Banuelos take the 20 kilograms of methamphetamine from Verduzco, put it in his car, drive around the corner, and then give it to another individual who was subsequently stopped by law enforcement and found in possession with the narcotics.

Further information learned from this investigation confirms that Banuelos is an active narcotics trafficker with no known legal employment. When Banuelos's vehicle was searched on October 22, 2021 pursuant to his arrest, law enforcement found 1) distribution quantities of narcotics; 2) multiple handguns; and 3) multiple fake IDs, showing that Banuelos is both a danger to the community based on his narcotics trafficking and the potential for danger by possessing guns, as well as a risk of flight. In his bedroom, agents found thousands of dollars in cash in a fanny pack. More generally, this DTO is sophisticated and has been successful in evading prosecution in the past. Banuelos is a Mexican citizen with no clear ties to the United States and the means and incentive to flee. The risk of flight is more than theoretical in this case, as the leader of the DTO, Daniel Noe Verduzco-Ramirez (whom the government believes directs the DTO from Mexico) recently fled the United States to Mexico because of a prior law enforcement investigation of the Verduzco DTO.

The government submits that Banuelos should be detained pending trial. He is a continuing danger to the community and there is a significant risk that he will flee to avoid prosecution. The rebuttable presumption in favor of detention also applies in this case. 18 U.S.C. § 3142(e)(3)(A).

I.   **Applicable Legal Standard**

Pursuant to the Bail Reform Act, codified at 18 U.S.C. § 3142, if the Court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court shall order the detention of the person before trial. 18 U.S.C. § 3142(e)(1). In making such a determination, the Court shall take into account the available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense involves a firearm;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or, local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"The facts that the Court uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The burden of proof rests with the government prior to trial. *See United States v. Hir*, 517 F.3d 1081, 1096 (9th Cir. 2008). With respect to risk of flight, the government bears the burden of demonstrating by a preponderance of the evidence that no set of release conditions will mitigate the risk of non-appearance. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. 18 U.S.C. § 3142(f)(2)(B).

## II. Banuelos Poses a Continuing Danger to the Community and is a Significant Risk of Flight

### A. Banuelos Poses a Continuing Danger to the Community Based on the Staggering Amount of Drugs Being Moved by the DTO and Possession of Firearms

As stated above, Banuelos is part of a DTO that possesses and distributes huge amounts of narcotics. In total, based on the investigation, there has been well over 650 pounds of methamphetamine and over 15 pounds of heroin seized from Verduzco DTO. In one location, 588 pounds of methamphetamine and 12 pounds of heroin were found in the DTO's stash house located in San Jose, CA. A picture of the drugs seized from the stash house is below:



Banuelos specifically also has access to and distributes very large quantities of methamphetamine.  On August 18, 2021, law enforcement watched as Jimenez-Verduzco gave Banuelos a package that turned out to have approximately 20 kilograms of methamphetamine in it.  Banuelos then gave the package to another individual, who was subsequently stopped by law enforcement and found with the 20 kilograms of meth.  The meth was later tested and found to be approxmiately 96% pure.  According to the case agent, discussions involving Banuelos intercepted on the wiretap reveal that the methamphetamine seized that day was being sold for $1,950 per kilo, which amounts to $39,000 in methamphetamine possessed and distributed by Banuelos.  With respect to the drugs found in the stash house, the case agent estimates that the 588 pounds of methamphetamine and 12 pounts of heroin costs well over $3 million in street value (if sold at user-amounts).

Banuelos also presents a danger to the community because of what was found in his vehicle during his arrest.  On or about October 25, 2021, Banuelos was arrested pursuant to a federal search warrant.  Officers searched his car pursuant to a federal search warrant.  Inside the truck officers found approximately one kilogram of methamphetamine, which is a distribution amount (as opposed to a user amount), along with five hand guns in a backpack located near the meth:




One of the guns shown above was loaded.  The fact that Banuelos possessed five handguns in close proximity to a distribution quantity of methamphetamine suggests that he possessed the weapons to protect the narcotics he planned to distribute.  As the Court is well aware, there is a profound danger

4

to the community any time drug dealers possess guns.  In addition, the government has information suggesting that Banuelos was going to provide a gun to Jimenez-Verduzco prior to Jimenez-Verduzco's arrest.

Furthermore, Banuelos is also a danger to the community by virtue of the means he has chosen to make a living.  As one court has explained, the risk of continued drug trafficking in particular is a danger to the community:

> In its report accompanying the Comprehensive Crime Control Act of 1984, Senate Report No. 98-225, reprinted in 1984 U.S. Code Cong. & Ad. News, pp. 3182, et seq., the Senate Committee on the Judiciary explained at length the concept of pretrial detention as provided under § 3142(e). The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community "refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *Id*. at 3195. The Committee also emphasized that "the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" (Footnote omitted.) *Id*. at 3196. *See also United States v. Strong*, 775 F.2d 504, 506-07 (3d Cir. 1985) (Congress equated drug trafficking with danger to community).

*United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *see also United States v. Torres*, 2009 WL 2160581 (N.D. Cal. 2009) (unpublished) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm.") (citing *United States v. Reynolds*, 956 F.3d 192, 192-93 (9th Cir. 1992)).  This is particularly true for a DTO of this magnitude.  In fact, even after Banuelos's arrest and the stash house seizure, the Verduzco DTO and its associates still appear to be actively attempting to traffic more narcotics.  As one example, on October 25, 2021, law enforcement seized another 20 pounds of methamphetamine from an individual named Edgar Josue Portillo, who the investigation has revealed is a suspected courier for Banuelos.  Portillo was arrested very near the stash house described above, where the nearly 600 pounds of methamphetamine was seized.  In addition, law enforcement has other information suggesting that the Verduzco DTO is still active, despite the above seizures.

### B.  Banuelos Presents a Significant Risk of Flight

Along with being a danger to the community, Banuelos is also a significant risk of flight.  As

discussed above, he has access to significant amounts of drugs which are very valuable, suggesting he has the resources to flee. The government believes that he is not a U.S. citizen and was born in Mexico. Furthermore, Banuelos does not appear to have lawful employment, yet drives multiple vehicles (an Infinity sedan and a GMC Sierra pick up truck), suggesting that he makes money primarily from law enforcement. When his room was searched pursuant to a federal search warrant, agents found thousands of dollars in cash, which is indicative of narcotics trafficking.

Perhaps most troublingly, during the search of Banuelos's home, officers also found multiple identifications showing Banuelos's picture but the names of other individuals. The fact that Banuelos had fake IDs suggests that he is capable of evading law enforcement detection. Finally, as described in more detail below, the leader of the Verduzco DTO already fled from law enforcement and made it to Mexico, suggesting that this DTO has both the wherewithal and expertise to attempt yet another escape. If released pending trial, the government has serious concerns that Banuelos would attempt to flee given his resources, the fact that he owns fake IDs, and his lack of ties to the community. In sum, the staggering quantity of narcotics being moved by the Verduzco DTO and the mandatory minimum sentence faced by Banuelos supports a risk of flight. *See United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990).

### C. The Verduzco DTO Has History of Evading Prosecution and Flight to Mexico

It is relevant to the Court's assessment of the defendant's risk of flight that the Verduzco DTO was previously investigated in 2018 by federal law enforcement. However, the investigation was unsuccessful because the DTO discovered its existence. Two vehicle tracking devices that had been installed on vehicles associated with Daniel Noe Verduzco-Ramirez (believed to be Jimenez-Verduzco's uncle and who still directs the DTO) were found by the targets. Daniel Verduzco then left for Southern California, and eventually for Mexico, until he resurfaced in the beginning of this instant investigation.

At the inception of this investigation, law enforcement installed tracker warrants on a DTO vehicle in October 2020. Later in November 2020, law enforcement attempted to conduct surveillance based on the tracker's location, only to learn that the tracker was no longer installed on the vehicle. Agents then learned that Daniel Verduzco fled the United States to Mexico yet again via plane on November 17, 2020, which coincided with the day of another law enforcement takedown of a DTO in

the Bay Area.  Daniel Verduzco is believed to have remained in Mexico since that time.

The fact that Daniel Verduzco successfully escaped to Mexico to evade federal prosecution suggests that high-ranking members of his DTO will try to do the same if given the opportunity.  In addition, throughout the instant investigation, members of the DTO have frequently changed phones, which made it difficult to track their activities and suggesting that they are attempting to evade detection.  Immediately prior to Banuelos's arrest in this case, members of the DTO were once again in the process of replacing of their phones.  Furthermore, the government has information that prior to his arrest, Banuelos and Daniel Verduzco communicated regularly about the trafficking of narcotics.  All of these facts suggest that if released from custody pending trial, Banuelos presents a significant risk of flight.

### D.  Conclusion

The government respectfully requests that Banuelos be detained pending trial as both a danger to the community and a serious risk of flight.

DATED:  November 2, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

_____/s/_____
LINA PENG
ROSS WEINGARTEN
Assistant United States Attorney